JAMES F. MCCABE (CA SBN 104686)
JMcCabe@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
ANGELA E. KLEINE (CA SBN 255643)
AKleine@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRACEE SWEET, LISA JARAMILLO, JAMES RALSTON, and TIFFANY THOMAS, on Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No.      5:14-cv-04531-PSG<br><br>**DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hearing Date: March 3, 2015<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

1  **NOTICE OF MOTION AND MOTION**

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      YOU ARE HEREBY NOTIFIED that on March 3, 2015, at 10:00 a.m., or as soon

4  thereafter as counsel may be heard by the above-entitled Court, located at the San Jose

5  Courthouse, Courtroom 5, 4th Floor, 280 South 1st Street, San Jose, CA 95113, defendant

6  LinkedIn Corporation ("Defendant" or "LinkedIn") will and hereby does move the Court

7  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with

8  prejudice all of the claims in the complaint of plaintiffs Tracee Sweet, Lisa Jaramillo, James

9  Ralston, and Tiffany Thomas (collectively, "Plaintiffs") for damages (ECF No. 1) ("Complaint"

10 or "Compl.") in this action for failure to state a claim upon which relief can be granted.

11     This motion is based on this Notice of Motion and Motion; the accompanying

12 Memorandum of Points and Authorities and Request for Judicial Notice; the pleadings and papers

13 on file herein; and such other matters as may be presented to the Court at the time of the hearing.

14

15 Dated: December 3, 2014          JAMES F. MCCABE
                                    TIFFANY CHEUNG
16                                  ANGELA E. KLEINE
                                    MORRISON & FOERSTER LLP
17

18                                  By:  _/s/ James F. McCabe_____
                                         James F. McCabe
19
                                    Attorneys for Defendant
20                                  LINKEDIN CORPORATION

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page(s)**

3  NOTICE OF MOTION AND MOTION ...................................................................................i

4  TABLE OF AUTHORITIES .............................................................................................iii

5  MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

6  INTRODUCTION .............................................................................................................1

7  BACKGROUND ..............................................................................................................1

8  I.    THE COMPLAINT'S FACTUAL ALLEGATIONS ...................................................1

9  II.   PLAINTIFFS' CLAIMS .......................................................................................5

10  LEGAL STANDARDS.....................................................................................................6

11  I.    PLEADING STANDARD ......................................................................................6

12  II.   APPLICABLE STATUTORY LAW........................................................................7

13  ARGUMENT ..................................................................................................................9

14  I.    SELF-PROVIDED EMPLOYMENT HISTORY IS NOT A
        "CONSUMER REPORT." ....................................................................................9

15

16  II.   A LIST OF POTENTIAL FORMER CO-WORKERS IS NOT A
        "CONSUMER REPORT" EITHER. .......................................................................11

17  CONCLUSION ..............................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 6

*Colony Cover Props., LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011) .................................................................................... 7, 12

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) .................................................................................... 6, 15

*Dotzler v. Perot*,
914 F. Supp. 328 (E.D. Mo. 1996) ............................................................................... 13

*Falkenberg v. Alere Home Monitoring, Inc.*,
No. 13-cv-00341-JST, 2014 U.S. Dist. LEXIS 142856 (N.D. Cal. Oct. 7, 2014) ................. 10

*Friend v. Ancillia Sys.*,
68 F. Supp. 2d 969 (N.D. Ill. 1999) .............................................................................. 10

*Individual Reference Servs. Group, Inc. v. FTC*,
145 F. Supp. 2d 6 (D.D.C. 2001) .................................................................................. 13

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ........................................................................................ 6

*Klonsky v. RLI Ins. Co.*,
No. 211-CV-250, 2012 U.S. Dist. LEXIS 47333 (D. Vt. Apr. 4, 2012) ................................ 8

*Ori v. Fifth Third Bank*,
603 F. Supp. 2d 1171 (E.D. Wis. 2009) ........................................................................ 11

*Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*,
537 F.3d 1184 (10th Cir. 2008) ..................................................................................... 10

*Porter v. Talbot Perkins Children's Services*,
355 F. Supp. 174 (S.D.N.Y. 1973) ............................................................................... 11

*Rush v. Macy's New York, Inc.*,
775 F.2d 1554 (11th Cir. 1985) ............................................................................... 10, 15

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003)............................................................................... 7, 12

**STATUTES**

15 U.S.C.
    § 1681a(d)(1)........................................................................................... *passim*
    § 1681a(d)(2)(A)(i) .................................................................................. 8, 10
    § 1681a(e) ................................................................................................... 14
    § 1681a(f) ............................................................................................... 9, 10
    § 1681a(h) ................................................................................................... 13
    § 1681b(a)(3) ........................................................................................... 5, 6
    § 1681b(b) ..................................................................................................... 5
    § 1681e(a) ..................................................................................................... 5
    § 1681e(b) ..................................................................................................... 5
    § 1681e(d) ............................................................................................... 5, 6

**RULES & REGULATIONS**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 6

76 Fed. Reg. 44462 (July 26, 2011) ...................................................................... 8

**OTHER AUTHORITIES**

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting
    Act,an FTC Staff Report with Summary of Interpretations*, July 2011  ................... 7, 8, 11, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**INTRODUCTION**

Every claim in the Complaint is based on the legal conclusion that LinkedIn's "Reference Search" functionality falls within the definition of "consumer reports" in the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").  That legal conclusion is wrong.  Reference Searches are not "consumer reports" under the FCRA.  The Complaint therefore states no claim and should be dismissed.

As relevant here, FCRA "consumer reports" are limited to communications of specific types of information about a person, which are expected or intended to serve as a factor in establishing that person's eligibility for employment.  Reference Searches simply do not provide any such information.  Instead, Reference Searches merely identify people who might have previously worked with the subject of the search.  The fact that John Doe and others worked at Google during the period that Jane Roe worked at Google conveys nothing "about" Jane.  It simply identifies someone who may have been one of Jane's former co-workers.  Nor could the fact that Jane worked with John or others at Google rationally serve as a factor in deciding whether or not to hire or promote Jane, since the fact of their contemporaneous employment says nothing about Jane's skills or performance.  The allegations of the Complaint thus establish that Reference Searches do not fall within the FCRA's "consumer report" definition, and the Complaint should be dismissed without leave to amend.

**BACKGROUND**

**I.      THE COMPLAINT'S FACTUAL ALLEGATIONS**

**The Defendant's Relationship With Its Members.**  The Complaint alleges that LinkedIn "operates an online professional network . . . through which the company's subscribers are able to create, manage and share their professional identities online."  (Compl. ¶¶ 1, 11.)

LinkedIn's website is free to anyone to sign up, and a member "can create her/his own professional profile, complete with a listing of professional experience and educational background, among other things."  (Compl. ¶ 20.)  Members can also create "connections," which "are typically colleagues, business contacts, friends or classmates, and need to be invited to join a

member's network." (*Id.* ¶ 22.) "Once two members are connected, their profile information is shared and, subject to privacy settings, each member has access to the other member's list of connections for further networking." (*Id.*) As Plaintiffs put it, it is "[t]hrough this process" that LinkedIn "assembles, aggregates, and publishes information . . . from . . . consumers related to their past and present employers, past and present employment duties, employment dates, employment skills, co-workers, contacts, educational background, honors and awards, among other things," including the subject of this litigation—Reference Searches. (*See id.* ¶ 25.)

The Complaint thus alleges that LinkedIn gathers information about consumers' prior employment directly from such consumers, and publishes that information for the consumer as a part of the online professional profile the consumer creates for him or herself.

**Reference Searches.**  This action "concerns Defendant's . . . reference search functionality" that generates "Reference Reports."[1]  (Compl. ¶¶ 2, 32-33.)  When a LinkedIn user runs a Reference Search, he or she will "see *a list of people who have worked at the same company* during the same time period *as the member* you'd like to learn more about." (*Id.* ¶ 33 (emphasis added).)  The Reference Search results list "the names, locations, employment areas, current employers, and current positions of all *persons in the user's network who may have worked with the applicant*," as well as "the name of the employer in common between the reference and the job applicant, and the reference's position and years employed at that common employer." (Compl. ¶¶ 35-36 (emphasis added).)

Reference Search results do not contain any information indicating whether the individuals listed in the results actually have any information regarding the subject of the search, and if so, what that information might consist of. (*See id.* ¶¶ 32-36; Compl. Ex. A.)  Instead, the results consist of a list of LinkedIn member names, employer names, member job titles and dates, generated using LinkedIn members' self-provided information. (*See id.*)

---

[1] The term "Reference Report" is a term created by Plaintiffs for argument; as demonstrated in the Complaint and Exhibit A, the feature at issue is called a "Reference Search," and results of such searches are referred to as "Reference Search Results."

1      Specifically, Reference Search results consist of two sections of information.  First, at the

2  top there is a line or lines of basic employment information (company, position, dates) about the

3  member, which the member him or herself supplied to LinkedIn for the purpose of publication.

4  (*See* Compl. ¶¶ 19-25, 32-36; *id.* Ex. A.)  Below is an excerpt of that portion of the Reference

5  Search results in Exhibit A to Plaintiffs' Complaint, enhanced only to clarify information that

6  Plaintiffs redacted.  (Declaration of Angela Kleine ("Kleine Decl.") ¶ 2.)

7

8

9

10

11

12

13      The remainder of the search results consists of a list of LinkedIn members in the user's

14  "network" who have stated that they worked for one of the listed employers at the same time as

15  the subject of the search.  (*See* Compl. ¶¶ 19-25, 32-36; Ex. A.)  The list includes the name of the

16  possible co-worker, the shared employer, and the person's self-reported job title and dates of

17  employment.  (*See id.*)  The first three names in the search results in Exhibit A to the Complaint

18  are depicted below, with explanations of the information Plaintiffs redacted.  (Kleine Decl. ¶ 2.)

19

20

21

22

23

24

25

26

27

28



The "possible co-workers" portion of Reference Search results does not contain any information about the subject of the search. It contains no information about what, if anything, the possible co-workers have to say about the subject's suitability for employment.[2]

**The Named Plaintiffs.** Plaintiffs allege that "[u]pon information and belief, each of the Plaintiffs had a Reference Report run on them via LinkedIn." (Compl. ¶ 49.) There are no factual allegations that suggest such "information and belief" is plausible as to each of the Plaintiffs. No Plaintiff alleges that she was told, or otherwise knows, that a Reference Search was run on her, that any prospective employer used the results of any such search to make a decision about her eligibility for employment, or that she was denied employment based on the content of Reference Search results. (*See id.* ¶¶ 49-69.) And while the Complaint contains a claim founded on the inaccuracy of a "consumer report" (*see id.* ¶¶ 96-98), there is no allegation that any Reference Search that might have been run about a Plaintiff contained any information about the Plaintiff that was inaccurate.

Plaintiff Lisa Jaramillo alleges that she "was contacted by an in-house recruiter for a company in the hospitality industry" regarding a potential job, and subsequently, another in-house recruiter with the company connected with her on LinkedIn. (*Id.* ¶¶ 63-65.) The company did not interview her. (*Id.* ¶ 66.)

Plaintiff James Ralston alleges that a "third-party recruiter connected with [him] on LinkedIn," submitted his resume to two employers, and advised him "to visit the website of one of the employers and to complete its online application." (*Id.* ¶¶ 59-61.) He alleges he did not receive an interview. (*Id.* ¶ 62.)

---

[2] Reference Search results also include a few annotations about the listed co-workers next to their names, such as "2nd," a thumbs-up icon, and "500+." The results contain a hyperlinked phrase: "What do these icons mean?" The hyperlinked text is attached to the Kleine Declaration as Exhibit 1 and referenced in LinkedIn's Request for Judicial Notice. (Kleine Decl. ¶ 3, Ex. 1.) As described there, the icons all relate to the co-worker, and not to the subject of the search. The first icon, e.g. "2nd," shows the degree of connection between the co-worker and the person who ran the search. (*Id.*) The thumbs-up icon indicates whether other LinkedIn members have endorsed the co-worker, and if so, how many; and the "500+" reflects the number of LinkedIn members to whom the co-worker is connected. (*Id.*)

1    Plaintiff Tracee Sweet claims that she "located a job opening . . . on LinkedIn, and

2    submitted her resume through LinkedIn." (*Id.* ¶ 52.)  Ms. Sweet "received a notification from

3    LinkedIn that the general manager of the potential employer had viewed her profile," and soon

4    thereafter, she went for an interview.  (*Id.* ¶¶ 53-55.)  While the employer initially indicated that

5    Ms. Sweet would be hired, the company ultimately decided not to hire her.  (*Id.* ¶¶ 56-57.)

6    Ms. Sweet claims that when she asked about the decision, "the general manager told her that the

7    company had checked some references for Plaintiff Sweet and, based on those references, had

8    changed its mind." (*Id.* ¶ 58.)

9    Plaintiff Tiffany Thomas claims that she "applied for a job in the transportation industry

10   through a LinkedIn job posting," and thereafter, "received a notification that a purchasing

11   manager from the potential employer had viewed her LinkedIn profile." (*Id.* ¶¶ 67-68.)  She

12   interviewed for the job, and has not yet received a decision as to whether she will be hired. (*Id.*

13   ¶ 69.)

14   **II.    PLAINTIFFS' CLAIMS**

15   Plaintiffs assert five claims under the FCRA, alleging violations of 15 U.S.C.

16   §§ 1681b(b), 1681e(a), 1681e(b), 1681e(d), and 1681b(a)(3), which, broadly, relate to various

17   disclosures and procedural requirements that the FCRA imposes in connection with a "consumer

18   reporting agency's" provision of a "consumer report" about a "consumer."  (Compl. ¶¶ 78-116.)

19   Each of Plaintiffs' claims lies only where a "consumer report" is prepared or furnished by

20   a "consumer reporting agency" as those terms are defined in the FCRA:

21   Claim I:   15 U.S.C. § 1681b(b):  "A consumer reporting agency may furnish a *consumer*

22   *report* only if the person who obtains such report from the agency certifies . . ."

23   Claim II:   15 U.S.C. § 1681e(a):  "Every consumer reporting agency shall maintain

24   reasonable procedures designed . . . to limit the furnishing of *consumer reports*

25   . . ."

26   Claim III:  15 U.S.C. § 1681e(b):  "Whenever a consumer reporting agency prepares a

27   *consumer report* . . ."

28

Claim IV:  15 U.S.C. § 1681e(d):  "A consumer reporting agency shall provide to any

person . . . to whom a *consumer report* is provided by the agency . . ."

Claim V:   15 U.S.C. § 1681b(a)(3):  "[A]ny consumer reporting agency may furnish a

*consumer report* under the following circumstances and no other . . . (3) to a

person which it has reason to believe [has a permissible purpose for use of a

consumer report]"

(emphasis added).

Thus, each of Plaintiffs' five claims is necessarily dependent on the subject Reference

Searches meeting the definition of "consumer report" under the FCRA.  (Claim I, Compl. ¶ 78

("LinkedIn's Reference Reports are consumer reports . . . ."); Claim II, ¶ 85 (same); Claim III,

¶ 94 (same); Claim IV, ¶ 102 (same); Claim V, ¶ 110 (same).)

## LEGAL STANDARDS

### I.    PLEADING STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must allege facts demonstrating a plausible claim for relief.  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  A claim

must "provide the grounds of [the] entitle[ment] to relief," and it "requires more than labels and

conclusions . . . .  Factual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

Furthermore, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*;

*see also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general

statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not

a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted

conclusion in reviewing a motion to dismiss."); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,

1047-48 (9th Cir. 2008) (affirming dismissal where "appellants pleaded only ultimate facts, such

1  as conspiracy, and legal conclusions" and "failed to plead the necessary evidentiary facts to

2  support those conclusions").

3        A "court need not accept as true conclusory allegations that are contradicted by documents

4  referred to in the complaint." *Colony Cover Props., LLC v. City of Carson*, 640 F.3d 948, 955

5  (9th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679); *see also Warren v. Fox Family Worldwide, Inc.*,

6  328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory

7  allegations which are contradicted by documents referred to in the complaint, and we do not

8  necessarily assume the truth of legal conclusions merely because they are cast in the form of

9  factual allegations.") (internal quotation marks, citations, and alterations omitted).

10  **II.     APPLICABLE STATUTORY LAW**

11        A **"consumer report"** under the FCRA is defined in relevant part as:

12              (1)  a "*communication* of any information"

13              (2)  "by a *consumer reporting agency*"

14              (3)  "*bearing on* a consumer's credit worthiness, credit standing,

15                    credit capacity, character, general reputation, personal

16                    characteristics, or mode of living" (the "seven characteristics")

17                    and

18              (4)  "which is *used or expected to be used* or collected in whole or

19                    in part *for the purpose of serving as a factor* in establishing the

20                    consumer's eligibility for . . . credit or insurance . . . [or]

21                    employment purposes . . . ."

22  15 U.S.C. § 1681a(d)(1) (emphasis added).

23        In order to qualify as a "consumer report," the information contained therein must "bear

24  on" one or more of the seven characteristics enumerated above. *Id.*; *see also generally* Federal

25

26

27

28

1 Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff*

2 *Report with Summary of Interpretations*, July 2011 ("40 Years Report"), at 21.[3]

3       For example, "reports about rental experiences such as consumers' evictions, rental

4 payments, [or] histories" are interpreted as "consumer reports" because the information contained

5 therein—substantive information about the subject's rental history and legal troubles—"bears on"

6 factors like "character" and "personal characteristics," as section 1681a(d)(1) requires. *See id.*

7 at 22 (collecting authority).  On the other hand, a "directory" or "list" of "names, addresses, and

8 phone numbers" or other "contact information" is not a "consumer report" because the list of

9 names and other identifying information does not "bear on" any of those characteristics. *See id.*

10       **"Transactions or Experience" Information.**  By statutory exclusion, "consumer reports"

11 do *not* include any "report containing information solely as to transactions or experiences

12 between the consumer and the person making the report," or any opinions based solely on that

13 information, even where such information "bears on" one or more of the seven characteristics.

14 15 U.S.C. § 1681a(d)(2)(A)(i).  For example, a "creditor's description of an account as 'slow

15 pay'" is not a "consumer report" so long as it is based on the "creditor's own experience with the

16 account."  40 Years Report at 24 (citing 16 C.F.R. 600, App., comments 603(d)-7A(1), 603(d)-

17 7A(3) (reserved)).  Similarly, an employer's communication to a third party "that describes an

18 employee's job performance" is not a "consumer report."  *Id.*

19       A **"consumer reporting agency"** is defined in relevant part as "any person which,"

20 (1) "for monetary fees," (2) "regularly engages in whole or in part in the practice of assembling or

21

22

23       [3] The 40 Years Report is a compilation summary of "the Federal Trade Commission

24 staff's interpretations of the Fair Credit Reporting Act," which includes, among other things,
    "informal guidance staff has provided to the public in the ensuing years and [the FTC Staff's]
    experience in enforcing the FCRA."  40 Years Report at 17.  While the report is not binding

25 precedential authority, it does provide persuasive guidance from the agency charged with
    enforcing and interpreting the FCRA before transfer of that authority to the Consumer Financial

26 Protection Bureau in July 2011.  *See* 76 Fed. Reg. 44462, 44463 (July 26, 2011); *Klonsky v. RLI
    Ins. Co.*, No. 211-CV-250, 2012 U.S. Dist. LEXIS 47333 (D. Vt. Apr. 4, 2012).  The 40 Years

27 Report is available at http://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-
    ftc-staff-report-summary-interpretations.

28

1  evaluating consumer credit information or other information on consumers" (3) "for the purpose

2  of furnishing consumer reports to third parties."  15 U.S.C. § 1681a(f).

3  **ARGUMENT**

4          The facts pled in the Complaint and its attachments demonstrate that Reference Searches

5  simply do not meet the FCRA's definition of a "consumer report."  Reference Search results

6  consist of (a) a basic, self-provided employment history for the member-subject of the search and

7  (b) a list of other LinkedIn members who have reported that they worked for one of the listed

8  employers during the same time period as the subject of the search.  (*See* Compl. ¶¶ 35-36,

9  Ex. A.)

10          The subject's employment history is not a "consumer report" because it represents

11  LinkedIn's transactions with the consumer, and because LinkedIn acquires such information for

12  the purpose of publishing it with the consumer's consent.  The list of possible co-workers is not a

13  "consumer report" because the names of former co-workers do not "bear on" the search subject's

14  characteristics, and because the names of possible co-workers cannot be expected or intended to

15  serve as a factor in determining the subject's eligibility for employment.  These facts exclude

16  Reference Searches from the FCRA's definition of a "consumer report."  Because each claim in

17  the complaint is founded on the premise that Reference Search results are "consumer reports," the

18  complaint fails to state a claim and should be dismissed.[4]

19  **I.      SELF-PROVIDED EMPLOYMENT HISTORY IS NOT A "CONSUMER
20          REPORT."**

21          The first section of Reference Search results lists jobs and employers that the subject

22  herself reported directly to LinkedIn.  (*See* Compl. ¶¶ 19-25, 32-36; Ex. A.)  This information

23  does not constitute a "consumer report" for two independent reasons.

24          First, the FCRA specifically excludes from the definition of "consumer report" any

25  "report containing information solely as to transactions or experiences between the consumer and

26  _____

27          [4] While Plaintiffs' claims are subject to dismissal for several other reasons and their
allegations present numerous pleading and standing deficiencies, Defendant brings this motion
28  focused on a single, targeted issue that is dispositive of all of Plaintiffs' claims as a matter of law.

1 the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i); *see, e.g.*, *Rush v. Macy's New*

2 *York, Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985) (information reported by retailer to credit bureau

3 about consumer's credit behavior not a "consumer report" due to "transaction or experience"

4 exclusion); *Friend v. Ancillia Sys.*, 68 F. Supp. 2d 969, 974 (N.D. Ill. 1999) (report by employer

5 as to plaintiff's conduct as its CFO not a "consumer report" under "transaction or experience"

6 exception); *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d

7 1184, 1191-92 (10th Cir. 2008) (reports of driver performance completed by trucking company

8 employers not "consumer reports" because they were based on employers' first-hand experience

9 with drivers).

10    Here, the Complaint alleges that LinkedIn "operates an online professional

11 network . . . through which [*consumers*] are able to create, manage and *share their professional*

12 *identities online*." (Compl. ¶¶ 1, 11 (emphasis added).) LinkedIn is alleged to "*publish*[]

13 *information . . . from . . . consumers* related to their past and present employers, past and present

14 employment duties [and] employment dates. . . ." (*Id.* ¶ 25 (emphasis added).) LinkedIn's

15 business is thus alleged to consist of the publishing of information supplied to it by consumers.

16 Its "transactions" with consumers consist of receiving information from consumers for

17 publication and then publishing it. Thus, a republication of such information—such as in the

18 results of a Reference Search—is a firsthand account of LinkedIn's direct "transaction or

19 experience" with the consumer.

20    Second, LinkedIn's communication of a consumer's employment history with the

21 consumer's consent is not a "consumer report" for the additional reason that LinkedIn does not

22 act as a "consumer reporting agency" in gathering such employment information.

23 A communication is a "consumer report" only if it is prepared by a "consumer reporting agency."

24 15 U.S.C. § 1681a(d)(1) ("communication . . . by a consumer reporting agency"). A "consumer

25 reporting agency," in turn, is defined as a person regularly engaged in "assembling or

26 evaluating . . . information on consumers for the purpose of furnishing consumer reports to third

27 parties." 15 U.S.C. § 1681a(f); *see Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-cv-

28 00341-JST, 2014 U.S. Dist. LEXIS 142856, at *10 (N.D. Cal. Oct. 7, 2014) (even if identifying

information and medical information constituted "seven characteristic" information, medical monitoring service did not obtain information for purpose of furnishing consumer report, and was not a "consumer reporting agency").

FTC Staff have correctly reasoned that entities consumers use to facilitate their communications or transactions with third parties do not meet the "consumer reporting agency" definition:  "An entity does not become a [consumer reporting agency] solely because it conveys, with the consumer's consent, information about the consumer to a third party in order to provide a specific product or service that the consumer has requested."  40 Years Report at 30-31; *see also Porter v. Talbot Perkins Children's Services*, 355 F. Supp. 174, 178 (S.D.N.Y. 1973) (finding adoption agency was not a "consumer reporting agency" in part because its collection of information did not implicate the concern animating the FCRA, which is "the effect of information compiled and forwarded by an entity not dealing directly with an individual"); *Ori v. Fifth Third Bank*, 603 F. Supp. 2d 1171, 1175 (E.D. Wis. 2009) ("Obtaining and forwarding information does not make an entity a [consumer reporting agency]." (citation omitted)).

The complaint here alleges that consumers "sign up" with LinkedIn to "create, manage and share their professional identities online" (Compl. ¶ 1), and that such self-created identities can include "a listing of professional experience and educational background, among other things."  (*Id.* ¶ 20.)  LinkedIn is thus alleged to acquire information about consumers' professional experience in connection with providing a publication service that consumers willingly sign up for.  As acknowledged by the FTC Staff, intermediary entities such as LinkedIn "assembl[e] . . . information on consumers" not to prepare consumer reports, but rather to carry out consumers' information-sharing objectives.  As a result, LinkedIn is not a "consumer reporting agency," and its publication of members' self-provided employment histories do not constitute "consumer reports."

## II.   A LIST OF POTENTIAL FORMER CO-WORKERS IS NOT A "CONSUMER REPORT" EITHER.

The other category of information found in Reference Search results—a list of names and current employers of the subject's possible former co-workers—does not meet the FCRA's

definition of "consumer report" either:  The list of names does not "bear on" the consumer-subject's characteristics, and largely for that reason, it could not rationally serve as a factor in determining the consumer's eligibility for employment or promotion.

First, to qualify as a "consumer report" under the FCRA, a communication must, at a minimum, contain information *bearing on* specific characteristics of a consumer—fundamentally, the information must be *about* one or more specific personal characteristics of a consumer.  *See* 15 U.S.C. § 1681a(d)(1).  Here, Plaintiffs allege that LinkedIn's Reference Searches bear on "a consumer's . . . character, general reputation, personal characteristics, or mode of living." (Compl. ¶¶ 78, 85, 94, 102, 110.)  However, the Reference Search results attached to the Complaint contradict that conclusory mischaracterization.  In assessing a motion to dismiss, the actual content of the search results controls over Plaintiffs' description thereof.  *Colony Cover Props., LLC*, 640 F.3d at 955; *Warren*, 328 F.3d at 1139.

Exhibit A to the Complaint demonstrates that Reference Searches merely generate a list of people who informed LinkedIn that they had the same employer at the same time as the subject of the search.  (Compl. ¶¶ 33-36; Ex. A.)  Exhibit A states:  "We found 12 users in your network who may have worked with [Subject Name] at these positions," listing three positions at employers, along with the date ranges.  (*Id.* Ex. A.)  The information that follows consists of the names of other LinkedIn members, the other members' position with their current employer, and their position at the employer shared with the subject during their period of overlapping employment.  (*Id.*)

What is notable about Reference Searches is what is *not* in the list of names.  There is *no* evaluative commentary about relevant characteristics of the subject (e.g., "bad manager"; "great co-worker"; "chronically late") attributed to any of the names shown.  The Complaint nowhere alleges that LinkedIn collects such information and includes it in Reference Searches.  Thus, while Reference Searches are alleged to identify people *who might possess information*[5] "bearing

---

[5] "We found 12 users in your network who *may have worked with* [report Subject] . . . ." (Compl. Ex. A (emphasis added).)

on" the subject's suitability for employment, the search results themselves are *not* alleged to *contain* such "bearing on" information.  A communication that does not consist of information "bearing on" a consumer's "seven characteristics" cannot constitute a "consumer report" under the FCRA.  15 U.S.C. § 1681a(d)(1) ("'[C]onsumer report' means . . . [a] communication of any information by a consumer reporting agency *bearing on* a consumer's [seven characteristics].");  *Individual Reference Servs. Group, Inc. v. FTC*, 145 F. Supp. 2d 6, 14-15 (D.D.C. 2001) (FTC acknowledges that "credit header" data—the name, address, social security number, and phone number of the consumer—is not a "consumer report" because it "does not bear on creditworthiness, credit capacity, credit standing, character, general reputation, personal characteristics, or mode of living, unless such terms are given an impermissibly broad meaning.").

Second, a Reference Search is not a consumer report because the information that it contains cannot be used as a factor in determining whether someone is eligible to be hired.  Even if a communication consists of "bearing on" information and is compiled by a "consumer reporting agency," it is not a "consumer report" unless the communication is "used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ."[6]  15 U.S.C. § 1681a(d)(1).  Accordingly, an "address update containing plaintiffs' names and current and former addresses as well as . . . social security information" was not a "consumer report" because, among other reasons, it was used to update contact information, which, the court held, meant that it was not "used to establish [the subjects'] eligibility for credit, employment or any of the other purposes listed in the statute."  *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996).

Here, as discussed above and as in *Dotzler*, Reference Searches simply provide lists of names and basic information about those listed individuals.  (Compl. ¶¶ 33-36; Ex. A.)  The names of persons who have self-identified as having overlapped at an employer with the subject

---

[6] "Employment purposes" is defined as "for the purposes of evaluating a consumer for employment, promotion, reassignment or retention as an employee."  15 U.S.C. § 1681a(h).

of a Reference Search cannot possibly serve "*as a factor* in establishing" the subject's eligibility for employment:  the mere fact that John Doe worked at Google while Jane Roe worked at Google conveys no information an employer would rely on in deciding whether or not to hire Jane.  For this additional and independent reason, Reference Searches are not "consumer reports" under the FCRA, and the Complaint fails to state a claim.

The crux of the problem with Plaintiffs' Complaint is that it confuses (1) communication of a *list* of people who *might* possibly have "bearing on" information about an individual (which the *user* might later gather through the *user's* direct communication with the co-worker in a communication that is not a "consumer report")[7] with (2) *actual communication* of "bearing on" information assembled by a consumer reporting agency through interviews with former employers or co-workers.  While the latter may amount to a "consumer report,"[8] the former clearly does not:  It simply does not fit within the statutory definition.

Applying Plaintiffs' attempted expansion of the "consumer report" definition to facts indistinguishable from those alleged here illustrates the absurdity of that expansion.  For example, a company looking to hire an attorney for its legal department might run a search on the Public Access to Court Electronic Records ("PACER") system.  Through results of a PACER search, they could identify all of the court cases a particular attorney is noticed on, and the identities of the companies or individuals the attorney has represented, and could then contact such companies or individuals to ask about the lawyer's character or general reputation in order to decide whether to hire that lawyer.  But no one could reasonably argue that PACER search results are an FCRA "consumer report" and that the courts are a "consumer reporting agency" simply because they can furnish to potential employers a list of persons who might have "seven characteristic" information

---

[7] *See* 40 Years Report at 24, discussing "transaction or experience" exception ("First hand report of consumer's performance.  A communication by an employer that describes an employee's job performance . . . is not a 'consumer report.'") (emphasis in original).

[8] *See* 40 Years Report at 24 (describing communication by a consumer reporting agency to an employer of reference checks it had compiled on a consumer as a "consumer report"); 15 U.S.C. § 1681a(e) (defining "investigative consumer report" as a consumer report in which information on a consumer's seven characteristics is obtained through interviews with persons knowledgeable about the consumer).

1   about an individual lawyer.  Yet under Plaintiffs' theory, virtually any compilation regardless of

2   its content, which might allow an employer to identify individuals who might have information

3   bearing on a potential employee's characteristics, would fall under the FCRA—e.g., PACER

4   reports, college alumni directories, law firm websites, or a Facebook list of friends.  It is well-

5   established that these kinds of directories are not consumer reports.  *See* 40 Year Report at 21

6   ("Telephone and other directories that only provide names, addresses, and phone numbers, are not

7   'consumer reports,'" and a report "limited to identifying information such as a consumer's name,

8   address, former addresses, or phone numbers, does not constitute a 'consumer report' if it does

9   not bear on any of the seven factors.") (citing 16 C.F.R. 600, App., comments 603(d)-4F, 603(d)-

10  5B (reserved)).  The Court should reject Plaintiffs' attempt to extend the FCRA far beyond its

11  statutory scope.

12                                      **CONCLUSION**

13          Reference Searches, as alleged by Plaintiffs, do not constitute "consumer reports" under

14  the FCRA.  Because all of Plaintiffs' FCRA claims are necessarily predicated on that legal

15  conclusion, the Complaint fails to state a claim.  There are no additional facts that Plaintiffs could

16  plead about their alleged experiences with LinkedIn or their failed job efforts, or details about the

17  Reference Search results attached to the Complaint, that would change this basic legal analysis.

18  Because the core FCRA claim here fails as a matter of law, the Complaint should be dismissed

19  with prejudice.  *See, e.g.*, *Rush*, 775 F.2d at 1556-57 (affirming dismissal of FCRA complaint

20  with prejudice, and remanding for award of sanctions against plaintiff); *Doe I*, 572 F.3d at 683

21  (upholding dismissal of complaint without leave to amend, explaining, "[w]e need not accept

22  Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss").

23

24

25

26

27

28

1    Accordingly, for all the reasons explained above, LinkedIn respectfully requests that the

2    Court dismiss Plaintiffs' claims with prejudice, pursuant to Rule 12(b)(6).

3

4    Dated: December 3, 2014                    JAMES F. MCCABE
                                                TIFFANY CHEUNG
5                                               ANGELA E. KLEINE
                                                MORRISON & FOERSTER LLP
6
                                                By:   /s/ James F. McCabe
7                                                     James F. McCabe

8                                                Attorneys for Defendant
                                                LINKEDIN CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   sf-3483153