1  JAMES F. MCCABE (CA SBN 104686)
   JMcCabe@mofo.com
2  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
3  ANGELA E. KLEINE (CA SBN 255643)
   AKleine@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Defendant
   LINKEDIN CORPORATION
8

9                 UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13 | TRACEE SWEET, LISA JARAMILLO, JAMES RALSTON, and TIFFANY THOMAS, on Behalf of Themselves and Others Similarly Situated, | Case No.   5:14-cv-04531-PSG
14 |                                                                                                                          | **DEFENDANT LINKEDIN CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
15 | Plaintiffs,                                                                                                              |
16 | v.                                                                                                                       | Hearing Date: March 3, 2015
17 | LINKEDIN CORPORATION,                                                                                                    | Time: 10:00 a.m.
                                                                                                                                 Courtroom: 5, 4th Floor
18 | Defendant.                                                                                                               | Judge: Hon. Paul S. Grewal

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. THE COMMUNICATION OF INFORMATION A CONSUMER HERSELF PROVIDED TO LINKEDIN FOR PUBLICATION IS NOT A "CONSUMER REPORT." | 2 |
| II. A LIST OF PEOPLE "WHO MAY HAVE WORKED WITH" A LINKEDIN MEMBER IS NOT A "CONSUMER REPORT" EITHER. | 7 |
|     A. A List of People "Who May Have Worked with" A Person Does Not "Bear on" That Person's Relevant Characteristics | 7 |
|     B. Reference Search Results Are Not Intended to Serve As a "Factor" in an Employment Decision. | 10 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. LexisNexis Risk & Analytics Group, Inc.*,
   No. 08–4708, 2010 WL 1931135 (D.N.J. May 12, 2010) ...................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 3, 12

*Bakker v. McKinnon*,
   152 F.3d 1007 (8th Cir. 1998) ............................................................................................ 10

*Beresh v. Retail Credit Co.*,
   358 F. Supp. 260 (C.D. Cal. 1973) ..................................................................................... 12

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ........................................................................................ 13, 14

*Dotzler v. Perot*,
   914 F. Supp. 328 (E.D. Mo. 1996) ..................................................................................... 10

*Ernst v. Dish Network, LLC*,
   No. 12-CV-8794(LGS), 2014 WL 4693700 (S.D.N.Y. Sept. 22, 2014) ................................. 9

*Greenway v. Information Dynamics, Ltd.*,
   399 F. Supp. 1092 (D. Ariz. 1974) ..................................................................................... 12

*Moreland v. CoreLogic SafeRent LLC*,
   No. CV 13–470 AG, 2013 WL 5811357 (C.D. Cal. Oct. 25, 2013) ....................................... 9

*Pappas v. Calumet City*,
   9 F. Supp. 2d 943 (N.D. Ill. 1998) ...................................................................................... 11

*Phillips v. Grendahl*,
   312 F.3d 357 (8th Cir. 2002) ............................................................................................... 9

*Robins v. Spokeo*,
   No. CV10–05306 ODW, 2011 WL 1793334 (C.D. Cal. May 11, 2011) ................................ 9

*Rush v. Macy's New York, Inc.*,
   775 F.2d 1554 (11th Cir. 1985) .................................................................................... 12, 14

*Salazar v. Golden State Warriors*,
   124 F. Supp. 2d 1155 (N.D. Cal. 2000) ............................................................................ 4, 5

*Trans Union v. FTC*,
   245 F.3d 809 (D.C. Cir. 2001) ....................................................................................... 9, 13

**STATUTES**

15 U.S.C.

§ 1681a(d) ................................................................................................................................ 1  
§ 1681a(d)(1) .............................................................................................................. 2, 7, 10, 12  
§ 1681a(d)(1)(B) ................................................................................................................... 12  
§ 1681a(d)(2)(A)(i) ............................................................................................................. 2, 4  
§ 1681a(e) ............................................................................................................................. 10  
§ 1681a(f) ......................................................................................................................... 2, 13  
§ 1681b(a)(3) ......................................................................................................................... 6  
§ 1681b(b)(2) ......................................................................................................................... 6  
§ 1681e(b) .............................................................................................................................. 6  
§ 1681i ................................................................................................................................... 6  

**OTHER AUTHORITIES**

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations*, July 2011 ................................. 2, 3, 10, 13

Leathers, *FTC Informal Staff Opinion Letter*, Sept. 9, 1998 ............................................................. 9

Novak, *FTC Informal Staff Opinion Letter*, Sept. 9, 1998 ................................................................. 5

# INTRODUCTION

In its opening brief, LinkedIn demonstrated that the Fair Credit Reporting Act ("FCRA") has no application to the results of a LinkedIn Reference Search. Those search results (for which Plaintiffs fabricate the name "Reference Reports") are nothing more than (1) a header with the current and former positions and employers the search subject provided in her LinkedIn profile, and (2) a list of people "who may have worked with" her at the same employers, together with those persons' current positions and employers.

LinkedIn addressed those two search result components separately because they are materially different for purposes of the FCRA. "Consumer reports" are limited to communications "bearing on" (i.e., about) certain characteristics *of the consumer who is the subject of the communication.* 15 U.S.C. § 1681a(d). Information about the *consumer-subject's* employment history clearly "bears on" one or more of his seven characteristics. LinkedIn explained that because it is undisputed that consumers give LinkedIn their employment history for the express purpose of publication, publishing that history in the search results' header does not make LinkedIn a "consumer reporting agency," nor make the search results a "consumer report." The Federal Trade Commission has made clear that entities such as mortgage brokers that, like LinkedIn here, publish consumer-supplied "bearing on" information to carry out consumers' transactions fall outside the "consumer reporting agency" definition. The employment histories are not "consumer reports" both because (1) LinkedIn is not a "consumer reporting agency" (another "consumer report" definition element), and (2) the employment histories are LinkedIn's "transactions" with consumers—information the "consumer report" definition expressly excludes.

The second component to Reference Search results—information about *other people's* employment histories—does *not* "bear on" characteristics of the *consumer-subject*. It is simply a list of potential coworkers—people who might possess information about the subject—not a communication of information about the subject herself. It therefore is not a "consumer report" either. Moreover, the names of persons "who may have worked with" an applicant cannot logically serve as a factor in making an employment decision about an applicant.

Plaintiffs' Opposition ignores this straightforward analytical framework, and instead relies on mischaracterization of the search results attached to the complaint and a conflation of information about the search subject and information about others. Plaintiffs' construction of the FCRA's terms as applied to self-published information is wrong, and if adopted, would harm consumers. Plaintiffs also fail to identify a single case, opinion letter, or instance of agency commentary holding that basic information about persons B, C and D somehow "bears on" characteristics of, and constitutes a "consumer report" regarding, person A.

There is simply no support for Plaintiffs' position. Leave to amend should not be granted. Through Exhibit A, the complaint establishes the substance of search results. Plaintiffs cannot allege that such results meet the elements of the FCRA's "consumer report" definition.

**ARGUMENT**

**I.   THE COMMUNICATION OF INFORMATION A CONSUMER HERSELF PROVIDED TO LINKEDIN FOR PUBLICATION IS NOT A "CONSUMER REPORT."**

Plaintiffs concede that LinkedIn members provide their own employment histories to LinkedIn so that LinkedIn can publish them. (Plaintiffs' Opposition to Defendant LinkedIn Corporation's Motion to Dismiss, ECF No. 25 ("Opp.") at 2, 8.) Plaintiffs agree that a member's employment history is information that "bears on" the relevant characteristics of that consumer. (*See id.* at 8, 11.) However, Plaintiffs dispute LinkedIn's contention that the employment history provided by the consumer in their profiles represents "transactions or experiences between the consumer and [LinkedIn]" (*id.* at 22-23), a communication of which is excluded from the "consumer report" definition. *See* 15 U.S.C. § 1681a(d)(2)(A)(i). Plaintiffs are wrong.

As shown in LinkedIn's opening brief, the evidentiary allegations of the complaint establish that LinkedIn is not a "consumer reporting agency." "Consumer reports" are limited to communications by "consumer reporting agencies." 15 U.S.C. § 1681a(d)(1); (s*ee* Defendant's Memorandum in Support of Motion to Dismiss, ECF No. 18 ("Mem.") at 9-11.) "Consumer reporting agencies" are limited to firms that assemble or evaluate information on consumers "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). LinkedIn cited the FTC's 40 Years Report for the proposition that entities like LinkedIn that convey

1   information at a consumer's request are not "consumer reporting agencies." The cited

2   commentary on "for the purpose of furnishing consumer reports to third parties" provides:

> <u>Information conveyed at the consumer's request</u>. An entity acting as an intermediary on behalf of the consumer who has initiated a transaction does not become a [consumer reporting agency] when it furnishes information to a prospective creditor to further the consumer's application. Thus, a mortgage broker does not become a [consumer reporting agency] by furnishing consumer reports to prospective creditors on behalf of a consumer that has sought the broker's assistance in obtaining a loan. An entity does not become a [consumer reporting agency] solely because it conveys, with the consumer's consent, information about the consumer to a third party in order to provide a specific product or service that the consumer has requested.

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations*, July 2011 ("40 Years Report"), at 30-31. Since the complaint specifically alleges that LinkedIn members provide LinkedIn with work history information to permit the member to publish an online professional profile through LinkedIn, the complaint alleges facts that affirmatively *exclude* LinkedIn from "consumer reporting agency" classification: LinkedIn "conveys, with the consumer's consent, information about the consumer to [other LinkedIn users] in order to provide a [professional networking] service that the consumer has requested." (Compl. ¶¶ 20-21.)

   Plaintiffs fail to respond to this argument. They do not discuss the FTC commentary regarding conveying information at a consumer's request, or identify any contrary authority. Instead, they fall back on asserting that since they make the conclusory allegation that LinkedIn assembles information for the purpose of preparing consumer reports, the complaint states a claim. (Opp. at 7-8.) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), forecloses this argument. The motion to dismiss must be evaluated on the basis of the allegations that LinkedIn obtains work history information from consumers who "create, manage and share their professional identities online." (Comp. ¶¶ 1, 21, 25.) Since those allegations establish that LinkedIn does not operate as a "consumer reporting agency" when it collects from consumers the work histories they wish to publish, the allegations also establish that LinkedIn's communication of such information is not a "consumer report."

Plaintiffs also take an unduly narrow view of the "transaction or experience" exclusion from the "consumer report" definition—an exclusion that provides an additional, independent reason why LinkedIn's publication of member work histories are not "consumer reports." Plaintiffs argue that the "transaction or experience" exclusion from the "consumer report" definition, as applied to employment information, covers only communications by someone who has worked with the consumer. (Opp. at 22-23.) The language of the exclusion is *not* so limited. The exclusion applies to "transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). As alleged in the complaint, LinkedIn has "transactions" with consumers in which those consumers furnish LinkedIn with work history information to publish as their professional profile. (*See* Mem. at 10; Compl. ¶¶ 1, 21, 25; Opp. at 2-3.) When LinkedIn displays a profile in which a member claims to have been a department manager at Wal-Mart, such display is not read as "LinkedIn has looked into this, and has concluded that John managed a department at Wal-Mart," but rather, "John directed LinkedIn to publish a profile saying he was a department manager at Wal-Mart." LinkedIn users thus view each profile (and work history) as a display of LinkedIn's transaction or experience with another member.

The case Plaintiffs cite on the "transaction or experience" exception actually supports LinkedIn's position. In *Salazar v. Golden State Warriors*, 124 F. Supp. 2d 1155 (N.D. Cal. 2000), an employer fired an employee on the basis of a private investigator's surveillance report stating the employee used drugs. The court held that the report was not a "consumer report" because it reflected the investigator's "transactions or experiences" with the plaintiff. *Id.* at 1161. The court characterized the FTC's interpretation of the "transaction or experience" exclusion as embracing reports "not based on information from an outside source." *Id.* at 1159-60 (quoting *Hodge v. Texaco*, 975 F.2d 1093, 1096 (5th Cir. 1992) (citing 16 C.F.R. Appendix, Part 600, at 344 (1991))). In contrast, the court noted that a summary of information about a consumer obtained from the consumer's prior employers, rather than from the consumer himself, could be a "consumer report." *Id.* Here, Plaintiffs expressly allege that the information at issue (the search result header information about the search subject) is provided *by the LinkedIn member*, directly

1    to LinkedIn, for the purpose of LinkedIn publishing that information.  (*See, e.g.*, Compl. ¶¶ 19-
2    25, 32-36; *id.* Ex. A; Opp. at 2-3.)  In other words, the search results do not publish any
3    information about the member that the member did not provide herself.

4         The September 9, 1998 Novak FTC Opinion Letter (cited in the 40 Years Report at 24)
5    relied on by Plaintiffs is inapposite.  There, a customer provided "bearing on" information to a
6    bank so that the bank could evaluate the customer's loan application.  Without being asked to do
7    so, the bank also sent the customer's information on to another bank.  *See id.*  The bank's
8    re-transmission was not a report of its "transaction or experience" with the customer because,
9    unlike LinkedIn members, the customer did not provide information to the bank so that it could
10   publish that information to others.

11        Plaintiffs also make a second argument as to why the "transaction or experience"
12   exception does not apply—namely that Reference Search results contain information beyond
13   LinkedIn's transactions and experience with the subject of the search, such as "industry" and
14   "geographic location."  (Opp. at 8.)  But Plaintiffs acknowledge that this information is not about
15   the *search subject—*they expressly describe it as relating to *other people*:  "the name of *the*
16   *reference*," "*the reference's* job title and years employed at [the] common employer, *the*
17   *reference's* current position, the *reference's* current job title, the geographic location where the
18   *reference* is currently employed, the years that *the reference* has been employed . . . the job
19   industry that *the reference* is currently employed in, the number of LinkedIn connections that *the*
20   *reference* has, and whether *the reference* has a 'premium' LinkedIn Account."  (Opp. at 8, 11
21   (emphasis added).)  *Salazar* rejected the same argument.  There, the plaintiff claimed that the
22   report fell outside the "transaction or experience" exception because the investigator "used more
23   than first-hand observations to produce the report," such as "the listing of the registered owners of
24   automobiles encountered by investigators."  *Salazar*, 124 F. Supp. 2d at 1160.  The court rejected
25   that argument because while the additional information was "second-hand information," it was
26   not "information pertaining to the plaintiff."  *Id.*  Here, the only information in the search results
27   "pertaining to the [subject]" is that supplied by the member-subject.  The "transaction or
28

1  experience" exclusion applies to member-provided work histories, and LinkedIn's publication of
2  such information is therefore not a "consumer report."

3  Plaintiffs' failure to respond clearly to LinkedIn's argument that the publication of
4  member-supplied work history is not a "consumer report" conceals the absurd implications of the
5  interpretations they advance. Plaintiffs appear to argue that intermediaries who publish
6  consumer-supplied work histories at consumers' requests are "consumer reporting agencies"
7  providing "consumer reports" (at least when the publications are purchased by employers). Were
8  that the case, newspapers running "position sought" advertisements placed by consumers and
9  containing work experience information could not sell papers to employers unless the newspaper
10 first obtained from the consumer-advertiser a signed consent for disclosure of the ad. 15 U.S.C.
11 § 1681b(b)(2) (requiring consumer consent for provision of consumer report for employment
12 purposes). Indeed, newspapers containing such ads could not be sold to anyone who did not
13 certify that they intended to use the newspaper to make an employment eligibility decision.
14 15 U.S.C. § 1681b(a)(3) (Consumer reports may only be furnished to persons with permissible
15 purposes.). If the consumer-advertiser supplied incorrect information in the ad, once the ad is
16 published, he could demand that the newspaper investigate the inaccurate information by giving
17 him, as information furnisher, notice of the dispute per 15 U.S.C. § 1681i, and might sue the
18 newspaper for failure to maintain procedures to ensure maximum possible accuracy of the
19 information it publishes for consumers in "position sought" ads. 15 U.S.C. §1681e(b). Under
20 these circumstances, no newspaper publisher would allow a consumer to advertise his work
21 history.

22 The FCRA was not enacted to make it impossible for consumers to seek the notice of
23 employers who do not already know them. To prevent the FCRA from operating as such a
24 barrier, the publication of consumer-provided work histories cannot be viewed as a "consumer
25 report."

26
27
28

## II.   A LIST OF PEOPLE "WHO MAY HAVE WORKED WITH" A LINKEDIN MEMBER IS NOT A "CONSUMER REPORT" EITHER.

Plaintiffs' Opposition focuses on the second component of Reference Search results—the list of persons "who may have worked with" the subject. For such a list to be a "consumer report," Plaintiffs must establish that the *list itself* "bear[s] on [the search subject's] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living" and that the *list itself* is expected to be used "for the purpose of serving as a factor in establishing the [search subject's] eligibility for . . . employment . . ." 15 U.S.C. § 1681a(d)(1). LinkedIn's opening brief explained why this cannot be done: information that is not even *about* a consumer cannot possibly "bear on" characteristics of that consumer, and no one makes employment decisions on the basis of who else was employed in an organization at the same time as the candidate. (*See* Mem. at 11-14.) Unable to overcome this fatal deficiency, Plaintiffs conflate the limited information on the list communicated *by LinkedIn* with information a prospective employer might independently obtain in a separate communication *with a listed person*.

### A.   A List of People "Who May Have Worked with" A Person Does Not "Bear on" That Person's Relevant Characteristics.

As discussed in LinkedIn's opening brief, a list of other people says nothing about the seven enumerated FCRA characteristics of the search subject. Plaintiffs cite no law to controvert that showing; instead, they posit a far-fetched "guilt by association" theory that is undercut by their complaint, common sense, and the law.

Plaintiffs speculate that if notorious users or persons with silly profiles were identified in a member's Reference Search results, employers might draw adverse inferences about the search subject because of their supposed association with such persons. (Opp. at 12, *et seq.*) But Reference Search results do not communicate that the search subject and the listed persons have any association at all—they simply report that at one point in time, they had a common

DEFENDANT LINKEDIN CORPORATION'S REPLY ISO MOTION TO DISMISS
Case No. 5:14-cv-04531-PSG
sf-3504573

7

employer.[1] (Compl. Exh. A.) And Plaintiffs do not allege that LinkedIn markets the search functionality as conveying any substantive information about the search subject. They allege instead that "LinkedIn markets the reference search functionality to potential employers as *a way to find* 'Trusted References for Job Candidates.'" (Compl. ¶ 34 (emphasis added).)[2] In other words, the search results are a tool that lists multiple people who, owing to the fact that they overlapped with the candidate at a specific employer, may have worked with the candidate. The information in the list of people who may have worked with the search subject is not "about" the search subject, and therefore does not "bear on" characteristics of the search subject. (*See* Compl. Ex. A (list does not indicate that search subject knows or associates with the listed persons).) Indeed, Plaintiffs themselves concede that the list includes people that "may not be a 'connection' of the consumer at issue." (Opp. at 8.) This concession is unsurprising—the names listed in Reference Search results are persons in the *search-initiator's* network, not the *search subject's*: "We found 12 users in *your* network who may have worked with [the search subject]." (Compl. Ex. A at 1 (emphasis added).) Thus, even assuming that the contents of search results reflect how "well-connected" someone is, such a conclusion would pertain only to the person running the search, not the subject of the search.

Plaintiffs next seek to bolster their claim that a list of other people communicates information "bearing on" the search subject with out-of-context quotations from separate material about the Reference Search feature. (Opp. at 4, 15, 19.) They claim that the search results are advertised to "Get the real story" on the candidate and "obtain 'reliable feedback'" on her. (*Id.*) Again, Plaintiffs' own allegations contradict this argument. As Plaintiffs admit, "LinkedIn markets the reference search functionality to potential employers as a way to *find* . . . references

---

[1] Aesop's *The Donkey and His Purchaser* (Opp. at 13 n.4) is not analogous here. Applied to the fable, Reference Search results do not report which, if any, donkey the search subject stood next to in a prior job; they simply report that the listed persons were on the same farm at the same time. Reference Search results thus do not communicate which "friend the [search subject] chose for himself." Aesop, *The Donkey and His Purchaser*, WM. L. Allison (Ed.), Aesop's Fables, New York (1881).

[2] Contrary to Plaintiffs' characterizations (*see* Opp. at 9, 14), the search results themselves do not say anything about "trusted references." (*See* Compl. Ex. A.)

1  who can give real, honest feedback," which in turn allows "potential employers to '[g]et the real
2  story on any candidate.'"  (Opp. at 4 (emphasis added); Compl. ¶¶ 34, 44.)  Thus, contrary to
3  Plaintiffs' arguments in the Opposition, Reference Search results are not intended or advertised to
4  themselves provide information about the search subject in any way.  Instead, as common sense
5  dictates, the list is merely a tool—like a telephone directory—to contact those that might
6  potentially be able to provide information about the candidate.

7  Plaintiffs do not identify a single case that stands for the proposition that contact
8  information *about someone else* "bears on" a consumer's seven characteristics for purposes of the
9  FCRA.  The authorities Plaintiffs cite are all inapposite.  In *Spokeo* and *Lexis* (*see* Opp. at 10), the
10  information defendants were alleged to have gathered from third party sources was all represented
11  to be about the subject of the report.  *Robins v. Spokeo*, No. CV10–05306 ODW (AGRx),
12  2011 WL 1793334, at *1-2 (C.D. Cal. May 11, 2011) (Spokeo was alleged to have published
13  inaccurate information about Robins' employment and education status without his knowledge);
14  *Adams v. LexisNexis Risk & Analytics Group, Inc.*, No. 08–4708, 2010 WL 1931135, at *1, 9
15  (D.N.J. May 12, 2010) (concerning report alleged to contain information gathered from, for
16  example, bankruptcy records, "public records, UCC filings, professional licenses, accident
17  history, recreational permits, and general information about the consumer's assets and property").

18  The other decisions also illustrate that the "consumer report" characterization depends on
19  a communication containing non-excluded information about the consumer who is the subject of
20  the report.  *See* Leathers, *FTC Informal Staff Opinion Letter*, Sept. 9, 1998 (third party's reports
21  about the prior work experience of job applicants, compiled by interviewing former employers,
22  could be a "consumer report"); *Trans Union v. FTC*, 245 F.3d 809, 815-16 (D.C. Cir. 2001)
23  (report listing individuals who met a specific set of credit-related criteria could be a "consumer
24  report"); *Phillips v. Grendahl*, 312 F.3d 357, 366 (8th Cir. 2002) (report prepared by private
25  investigator about specific individual was "consumer report" under the FCRA); *Moreland v.
26  CoreLogic SafeRent LLC*, No. CV 13–470 AG (ANx), 2013 WL 5811357, at *1, 4 (C.D. Cal.
27  Oct. 25, 2013) (report compiling public information such as criminal history and sex offender
28  status of the report subject could be a "consumer report"); *Ernst v. Dish Network, LLC*, No. 12-

CV-8794(LGS), 2014 WL 4693700, at *4 (S.D.N.Y. Sept. 22, 2014) (information in background check summary, labeling consumer as "high risk," constituted "bearing on" information under the FCRA).

Because neither the FCRA nor any authority Plaintiffs cite provide that information about something or someone other than the consumer can convert a document into a "consumer report," Plaintiffs' claims should be dismissed.

### B. Reference Search Results Are Not Intended to Serve As a "Factor" in an Employment Decision.

Plaintiffs' claims fail for an additional independent reason: Reference Search results cannot rationally be used as a factor in determining whether the subject member is eligible for employment. 15 U.S.C. § 1681a(d)(1). As explained in the opening brief, a list of names and basic information about those listed individuals does not constitute a "consumer report." (Mem. at 13 (citing *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996); 40 Years Report at 21).)[3] Instead, it is the compiling of downstream information about the subject member obtained from former employers or coworkers into a report and communicating that content to a prospective employer that may cross the line into "consumer report" territory. (Mem. at 12-15 (citing 40 Years Report at 24; 15 U.S.C. § 1681a(e)).) Reference Search results do not provide any such downstream information about the subject member.

As the parties agree, the Court should look to the "ultimate use, expected use and reason for the collection of information" in considering whether Reference Search results are "consumer reports." (Opp. at 17 (citing *Bakker v. McKinnon*, 152 F.3d 1007, 1012 (8th Cir. 1998)).) And Plaintiffs admit that the "ultimate use" of the Reference Search results is to "*locate[] people*" who can, in turn, "provide reliable feedback about a job candidate." (*Id.* at 17 (emphasis added).) It is that information obtained from a person—acquired by the prospective employer, not provided by

---

[3] Plaintiffs' attempt to distinguish *Dotzler*, 914 F. Supp. at 330, is unavailing. Regardless of the litigation stage or representation of the plaintiff, the court correctly interpreted the FCRA to explain (consistent with the FTC's guidance in its 40 Years Report) why a list of names and contact information cannot be a "consumer report" if it is not "used or expected to be used" for the purposes of establishing employment eligibility.

LinkedIn—that may serve as a "factor" in evaluating a candidate. The search results themselves provide no such information about the candidate. Indeed, as LinkedIn's marketing materials specify, the point is that the search results allow an employer to identify and talk with references in order to "get the real story" on the applicant. (*See* Compl. ¶¶ 38-39, 44.) The search results *themselves* convey no story at all. For instance, according to the complaint, Ms. Sweet was allegedly denied a job *after* "the company had checked some references," and "*based on those references*, had changed its mind." (*Id.* ¶ 58 (emphasis added).) No Plaintiff alleges that an employer refused her or him a job interview of employment based on reviewing Reference Search results alone.[4] While this is not surprising, as it is not remotely plausible that this could have occurred, it is nevertheless fatal to Plaintiffs' claims.

The decision Plaintiffs cite, *Pappas v. Calumet City*, 9 F. Supp. 2d 943, 949 (N.D. Ill. 1998), contradicts their argument. In *Pappas*, the defendant argued that the credit report it obtained about the plaintiff was not a "consumer report" because although defendant told the CRA that it was obtaining the report in order to evaluate the subject's eligibility for employment, defendant in fact obtained the report for investigative purposes. *Id.* at 947-48. The court rejected the argument, holding that the "'actual reason' for obtaining [the] credit report is irrelevant," so long as the *expected* use of the report brought it within the "consumer report" definition. *Id.* at 948. The situation here is the opposite. Here, Plaintiffs allege (and thus admit) that the purpose of the search results was to put potential employers in contact with potential former coworkers who might have information about the search subject. The purpose of the communication was not to *convey* whatever information those former coworkers might have—there is no such information in the results. The "consumer report" definition does not capture communications "expected or intended to find people."

---

[4] There is no need for discovery on this legal issue. (Opp. at 18.) The subject of the proposed discovery is the reason why the employers to whom Plaintiffs applied rejected them. Plaintiffs would simply need to inquire with those employers, but apparently made no effort to do so except for Ms. Sweet. Her efforts revealed that she was rejected on the basis of information the potential employer learned in speaking with someone who had worked with her, not on the basis of which names appeared in Reference Search results. (Compl. ¶ 58.)

Plaintiffs argue that since Reference Search results "can contribute to hiring decisions made by employers," (Opp. at 19) by helping employers identify persons with knowledge of the search subject, they fall within the "consumer report" definition. The "consumer report" definition does not extend to every tool or resource useful to employers in evaluating job candidates. It is limited to communications (a) by a "consumer reporting agency" of (b) "bearing on" information about the consumer. 15 U.S.C. § 1681a(d)(1). A telephone directory for a candidate's current place of employment might "contribute to a hiring decision" by helping a recruiter find people who actually know the candidate, but that would not make the directory a "consumer report." Communications that *identify sources* of "bearing on" information, but do not *convey* such information, do not fall within the "consumer report" definition.

Finally, Plaintiffs argue that the complaint's bare legal conclusion that Reference Search results are used "for employment purposes" is sufficient "at this stage of [] litigation." (Opp. at 20-21, 24.) Plaintiffs truncate the pertinent phrase to remove a key limitation: The consumer report definition requires that a communication be used "as a factor in establishing the consumer's eligibility for . . . employment purposes." 15 U.S.C. § 1681a(d)(1)(B). It does not apply to material with any attenuated connection to "employment" as Plaintiffs imply. The authorities Plaintiffs cite in support of their argument (Opp. at 20-21) are inapposite because they relate to reports intended to convey seven-factor information about the report subject. *See Beresh v. Retail Credit Co.*, 358 F. Supp. 260, 262 (C.D. Cal. 1973) (holding that FCRA applies to "insurance claims investigative reports" used "as a factor in establishing the consumer's eligibility for . . . insurance"); *Greenway v. Information Dynamics, Ltd.*, 399 F. Supp. 1092, 1094 (D. Ariz. 1974) (holding that FCRA applies to "information on the check cashing histories of potential customers").

Plaintiffs' bald legal conclusion—characterizing Reference Search results as a "consumer report" that is used as a "factor in determining eligibility for employment"—is irrelevant because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678. *See, e.g., Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1558 (11th Cir. 1985) (affirming dismissal of FCRA complaint with

prejudice, and remanding for award of sanctions against plaintiff); *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (upholding dismissal of complaint without leave to amend, explaining, "[w]e need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss").[5] Indeed, not only is Plaintiffs' argument unsupported, it is illogical. Under Plaintiffs' theory, virtually any list of people, regardless of its content, that might allow an employer to identify individuals who might have information bearing on a potential employee's characteristics would fall under the FCRA—e.g., PACER reports, college alumni directories, law firm websites, or a Facebook list of friends. (Mem. at 14.) Plaintiffs argue that the FCRA does not apply to at least some of those compilations of information because they are "not disseminated for monetary fees" (Opp. at 24), but that misses the point. *See, e.g.*, 15 U.S.C. 1681a(f) (statute applies to cooperative nonprofits). Instead, these kinds of directories are not consumer reports because the "bearing on" and "factor" requirements are not met. *See* 40 Years Report at 21 ("Telephone and other directories that only provide names, addresses, and phone numbers, are not 'consumer reports,'" and a report "limited to identifying information such as a consumer's name, address, former addresses, or phone numbers, does not constitute a 'consumer report' if it does not bear on any of the seven factors." (citing 16 C.F.R. 600, App., comments 603(d)-4F, 603(d)-5B)). Exactly like these other compilations of information, a broad list of search results—without commentary regarding the applicant—do not (and cannot) serve as a factor in determining a consumer's eligibility for employment.

## CONCLUSION

Plaintiffs' attempt to expand the FCRA to apply to a list of former coworkers fails as a matter of law. Because there is no amendment to the complaint that would cure this fundamental

---

[5] Plaintiffs' "standing alone" argument (Opp. at 18) is a straw man. Defendant did not argue that information must, "standing alone," qualify as a consumer report. (*See* Mem. at 1, 9, 12-14.) Instead, the information must "serve as a factor" in determining eligibility for employment. (*See id.* at 9.) For instance, the targeted marketing lists discussed in the *Trans Union* matter (Opp. at 18-19) narrowed the list of consumers that a creditor would make an offer to, based on the credit characteristics of those consumers. Here, by contrast, the Reference Search results are a directory of potential contacts who, in turn, may have information that could serve as a factor in the employment determination. (*See* Mem. at 9.)

1  legal deficiency, the complaint should be dismissed with prejudice. *See, e.g.*, *Rush*, 775 F.2d at
2  1556-57; *Doe I*, 572 F.3d at 683.

4  Dated: February 13, 2015           JAMES F. MCCABE
                                      TIFFANY CHEUNG
5                                     ANGELA E. KLEINE
                                      MORRISON & FOERSTER LLP

                                      By: */s/James F. McCabe*
                                              James F. McCabe

                                      Attorneys for Defendant
                                      LINKEDIN CORPORATION